RUSTY RENDON v. ARIZONA BEVERAGES USA LLC        CASE NO. _____

# EXHIBIT A

Electronically FILED by Superior Court of California, County of Los Angeles on 03/25/2020 05:03 PM Sherri R. Carter, Executive Officer/Clerk of Court, by C. Monroe, Deputy Clerk
20STCV12028
Assigned for all purposes to: Stanley Mosk Courthouse, Judicial Officer: David Sotelo



1   PACIFIC TRIAL ATTORNEYS
    A Professional Corporation
2   Scott J. Ferrell, Bar No. 202091
    sferrell@pacifictrialattorneys.com
3   4100 Newport Place Drive, Ste. 800
    Newport Beach, CA  92660
4   Tel: (949) 706-6464
    Fax: (949) 706-6469
5
6   Attorneys for Plaintiff

7

8                   SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                           COUNTY OF LOS ANGELES

10

11  RUSTY RENDON, an individual,            Case No.   20STCV12028

12              Plaintiff,

13          v.                              COMPLAINT

14
    ARIZONA BEVERAGES USA LLC, a New
15  York limited liability company, and DOES 1-10,
    inclusive,
16
                Defendants.
17

18

19

20

21

22

23

24

25

26

27

28

                                COMPLAINT

EXHIBIT A

Plaintiff Rusty Rendon ("Plaintiff") alleges the following upon information and belief based upon investigation of counsel, except as to his own acts, which he alleges upon personal knowledge:

### INTRODUCTION

1.    As recently recognized by the Supreme Court of the United States, "The Internet's prevalence and power have changed the dynamics of the national economy." *South Dakota v. Wayfair, Inc.*, 138 S. Ct. 2080, 2097 (2018) (noting that in 1992, less than 2 percent of Americans had Internet access whereas today that number is about 89 percent). According to 2018 polling data, 89 percent of American adults use the Internet.[1] Indeed, one federal district court has noted that "few areas are more integral to 'the economic and social mainstream of American life,' than the Internet's websites." *Del-Orden v. Bonobos, Inc.*, No. 17 Civ. 2744 (PAE), 2017 WL 6547902, at *9 (S.D.N.Y. Dec. 20. 2017); *United States v. Peterson*, 248 F.3d 79, 83 (2d Cir. 2001) ("Computers and Internet access have become virtually indispensable in the modern world of communications and information gathering.").

2.    According to recent U.S. Census data, approximately 8 million Americans describe themselves as disabled because they are visually-impaired.[2] Thus, depriving blind persons of equal access to commercial websites on the internet would allow American businesses to treat blind persons as second-class citizens who can be segregated from the rest of American society, which is antithetical to the very purpose that motivated Congress to enact the Americans with Disabilities Act of 1990, 42 U.S.C. § 12181 *et seq.* ("ADA"), almost three decades ago, as well as the enactment of California's Unruh Civil Rights Act. "'Congress found that 'historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem.' '" *Del-Orden*, 2017 WL 6547902, at *9 (quoting *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 674-75, 121 S. Ct. 1879 (2001) (quoting 42 U.S.C. § 12101(a)(2))). "Congress found that 'physical or mental disabilities in no way diminish a person's right to fully participate in *all aspects of society*, yet many people with physical or

---

[1]   http://www.pewinternet.org/fact-sheet/internet-broadband/ (last visited July 30, 2018). Indeed, 98 percent of adults between the ages of 18-29 use the Internet, and 97 percent of adults between the ages of 30-49 use the Internet. *Id.*

[2]   In   2016,   an   estimated   7.7   million   Americans   reported   having   a   visual   disability. http://www.disabilitystatistics.org/reports/acs.cfm?statistic=1 (last visited July 30, 2018). The statistics were calculated by the Cornell University Yang Tan Institute using the U.S. Census Bureau's 2016 American Community Survey (ACS) Public Use Microdata Sample (PUMS) data. The estimate is based on a sample of 3,085,278 persons who participated in the 2016 ACS.

COMPLAINT

EXHIBIT A

1   mental disabilities have been precluded from doing so because of discrimination.'" *Del-Orden*, 2017

2   WL 6547902, at *9 (quoting 42 U.S.C. § 12101(a)(1)) (emphasis added in *Del-Orden*).   "After

3   thoroughly investigating the problem, Congress concluded that there was a 'compelling need' for a 'clear

4   and comprehensive national mandate' to eliminate discrimination against disabled individuals, and to

5   integrate them 'into the economic and social mainstream of American life.'" *PGA Tour*, 532 U.S. at

6   675 (quoting S. Rep. No. 101-116, p. 20 (1989); H.R. Rep. No. 101-485, pt. 2, p. 50 (1990),

7   U.S.C.C.A.N. 1990, pt. 2, pp. 303, 332).   To remedy these ills, "Congress provided [a] broad mandate"

8   in the ADA to effect the statute's "sweeping purpose." *Id.*   "In a society in which business is increasingly

9   conducted online, excluding businesses that sell services through the Internet from the ADA would[:]

10   'run afoul of the purposes of the ADA and would severely frustrate Congress's intent that individuals

11   with disabilities fully enjoy the goods, services, privileges, and advantages *available indiscriminately*

12   *to other members of the general public*'". *National Ass'n of the Deaf v. Netflix, Inc.*, 869 F. Supp. 2d

13   196, 200 (D. Mass. 2012) (emphasis added) (quoting *Carparts Distrib. Ctr. v. Auto Wholesaler's Ass'n*,

14   37 F.3d 12, 20 (1st Cir. 1994)).

15       3.      Section 51(f) of the California Civil Code provides that a violation of the right of any

16   individual under the ADA, shall also constitute a violation of the Unruh Civil Rights Act.   A person who

17   visits a business's website with intent to use its services and encounters terms or conditions that exclude

18   the person from full and equal access to its services has standing under the Unruh Act, with no further

19   requirement that the person enter into an agreement or transaction with the business. *White v. Square,*

20   *Inc.*, 7 Cal.5th 1019, 2019 WL 3771912, at *7 (Cal. Sup. Ct. Aug. 12, 2019).

21       4.      Plaintiff is a blind individual who requires screen reading software to read website

22   content and access the internet.   At all relevant times, Defendant Arizona Beverages USA LLC

23   ("Defendant") maintained its website, https://www.drinkarizona.com/ (the "Website") in such a way

24   that the Website contained numerous access barriers preventing Plaintiff, and other blind and visually-

25   impaired individuals, from gaining equal access to the Website.   At all relevant times, Defendant's denial

26   of full and equal access to its Website, and therefore its products and services offered thereby, were a

27   violation of Plaintiff's rights under California's Unruh Civil Rights Act.

28   ///

EXHIBIT A

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over this action.  This Court has personal jurisdiction over Defendant because Defendant has conducted and continues to conduct substantial business in the State of California, and because Defendant's offending Website is available across California.

6.      Venue is proper in this Court because Defendant conducts substantial business in this County, and because a substantial portion of the misconduct alleged herein occurred in the County of Los Angeles.

## PARTIES

7.      Plaintiff Rusty Rendon resides in Madera County, California.  Plaintiff is permanently blind and uses screen readers in order to access the internet and read website content.  At all relevant times, as detailed above, despite several attempts to use and navigate the Website, Plaintiff was denied the full use and enjoyment of the facilities and services of the Website as a result of accessibility barriers on the Website.  At all relevant times, the access barriers on the Website caused a denial of Plaintiff's full and equal access multiple times in the past, and deterred Plaintiff on a regular basis from accessing Defendant's Website.

8.      While Plaintiff genuinely wants to avail himself of Defendant's goods and services as offered on Defendant's Website, Plaintiff has a dual motivation: he is also a "tester," which one federal court has defined to be "individuals with disabilities who visit places of public accommodation to determine their compliance with Title III [of the ADA]." *Harty v. Burlington Coat Factory of Penn., L.L.C.*, Civil Action No. 11-01923, 2011 WL 2415169, at *1 n.5 (E.D. Pa. June 16, 2011).  Indeed, it is widely accepted that "testers" such as Plaintiff advance important public interests and should be "praised rather than vilified." *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 954 (7th Cir. 2006). Plaintiff has filed multiple lawsuits against various operators of commercial websites under the Unruh Civil Rights Act as part of his advocacy work on behalf of the civil rights of visually-impaired persons. Plaintiff intends to continue to engage in such advocacy work into the foreseeable future to ensure that Defendant's commercial Website and others are fully and equally enjoyable to and usable by visually-impaired persons, including himself.

EXHIBIT A

9.      Plaintiff is informed and believes, and thereon alleges, that Defendant Arizona Beverages USA LLC, is a New York corporation with its principal place of business located in Woodbury, New York.  Plaintiff is informed and believes, and thereon alleges, that Defendant owns, operates and provides to the public the Website.  The Website provides access to Defendant's array of products and services, including descriptions of its products, amenities and services, and many other benefits related to its products and services.  The Website is a public accommodation within the definition of Title III of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12181(7) and is a "business establishment" within the meaning of the Unruh Civil Rights Act, California Civil Code § 51 *et seq.*  The Website is a service, privilege, and advantage and accommodation of Defendant's services.

10.     At all relevant times, each and every Defendant was acting as an agent and/or employee of each of the other Defendants and was acting within the course and/or scope of said agency and/or employment with the full knowledge and consent of each of the Defendants. Each of the acts  and/or omissions complained of herein were alleged and made known to, and ratified by, each of the other Defendants (Arizona Beverages USA LLC, and DOE Defendants will hereafter collectively be referred to as "Defendant").

11.     The true names and capacities of the Defendants sued herein as DOES 1 through 10, inclusive, are currently unknown to Plaintiff, who therefore sues such Defendants by fictitious names. Each of the Defendants designated herein as a DOE is legally responsible for the unlawful acts alleged herein. Plaintiff will seek leave of Court to amend this Complaint to reflect the true names and capacities of the DOE Defendants when such identities become known.

## FACTS

12.     The Internet has become a significant source of information, a portal and tool for conducting business, and a means for doing everyday activities such as shopping, banking, etc. for both the sighted and blind, and/or visually-impaired persons.

13.     Blind individuals may access websites by using keyboards in conjunction with screen-reading software that vocalizes visual information on a computer screen.  Screen access software provides the only method by which a blind person may independently access the internet.  Unless websites are designed to be read by screen reading software, blind persons are unable to fully access

EXHIBIT A

1   websites and the information, products and services, privileges, advantages, and accommodations
2   contained thereon.

3       14.    The international website standards organization, W3C, has published version 2.0 of the
4   Web Content Accessibility Guidelines ("WCAG 2.0").  WCAG 2.0 are well-established, industry
5   standard guidelines for ensuring websites are accessible to blind and visually-impaired people.  These
6   guidelines are successfully followed by numerous large business entities to ensure their websites are
7   accessible.  These guidelines recommend several basic components for making websites accessible
8   including, but not limited to, adding invisible alternative text to graphics, ensuring that all functions can
9   be performed using a keyboard and not just a mouse; ensuring that image maps are accessible, and
10  adding headings so that blind people can easily navigate websites. Without these very basic components,
11  a website will be inaccessible to a blind or visually-impaired person using a screen reader.

12      15.    Defendant offers the Website, which provides, as set forth above, a breadth of
13  information concerning its products, and other amenities and services, privileges, advantages, and
14  accommodations.

15      16.    Based on information and belief, at all relevant times, it was Defendant's policy and
16  practice to deny blind users, including Plaintiff, equal enjoyment of and access to the Website.  At all
17  relevant times, due to Defendant's failure and refusal to remove access barriers on the Website, Plaintiff
18  and other blind and visually impaired individuals were denied equal enjoyment of and access to
19  Defendant's services, advantages, privileges, and accommodations offered to the public through the
20  Website.

21      17.    At all relevant times, Defendant denied blind individuals equal enjoyment of and access
22  to the products, other services, privileges, advantages, and accommodations and information made
23  available through the Website by preventing them from freely navigating the Website.  At all relevant
24  times, the Website contained access barriers that prevent free and full use by Plaintiff and other blind
25  persons using screen reading software.

26      18.    At all relevant times, the Website's barriers were pervasive and included, but were not
27  limited to, the following: (1) Missing alternative text which presents a problem because an image without
28  alternative text results in an empty link.  Alternative Text is invisible code embedded beneath a graphical

EXHIBIT A

1   image on a website. Web accessibility requires that Alternative Text be coded with each picture so that

2   a screen reader can speak the Alternative Text where a sighted user sees pictures. Alternative Text does

3   not change the visual presentation, but instead generates a text box that will pop-up when the mouse

4   moves over the picture. The lack of Alternative Text on these graphics prevents screen readers from

5   accurately vocalizing a description of the graphics; (2) Linked image missing alternative text which

6   presents a problem because an image without alternative text results in an empty link. Images that are

7   the only thing within a link must have descriptive alternative text. If an image is within a link that

8   contains no text and that image does not provide alternative text, a screen reader has no content to present

9   to the user regarding the function of the link; (3) Empty links that contain no text causing the function

10   or purpose of the link to not be presented to the user. This can introduce confusion for keyboard and

11   screen reader users; and (4) Missing form label, which means that a form control does not have a

12   corresponding label. If a form control does not have a properly associated text label, the function or

13   purpose of that form control may not be presented to screen reader users. Form labels also provide visible

14   descriptions and larger clickable targets for form controls.

15        19.   At all relevant times, due to the inaccessibility of the Website, blind and otherwise

16   visually impaired customers who use screen readers were hindered from effectively browsing for

17   Defendant's products, amenities and services, privileges, advantages, and accommodations that exist

18   online unlike sighted users. If the Website had been accessible, Plaintiff would have independently and

19   privately investigated Defendant's products, services, privileges, advantages, accommodations, and

20   amenities, as sighted individuals can and do.

21        20.   Despite several attempts to access the Website in recent months, at all relevant times the

22   numerous access barriers contained on the Website denied Plaintiff's full and equal access, and deterred

23   Plaintiff on a regular basis from accessing the Website. Similarly, at all relevant times, based on the

24   numerous access barriers contained on the Website, Plaintiff was deterred from purchasing Defendant's

25   products services as Plaintiff would have been able to do by using the Website. Plaintiff continues to

26   attempt to utilize the Website and plans to continue to attempt to utilize the Website in the near future.

27   Plaintiff's dignitary interest as a disabled person has been harmed by Defendant's actions.

28   ///

EXHIBIT A

## CAUSE OF ACTION

### Violations of the Unruh Civil Rights Act, California Civil Code § 51 *et seq.*

#### (By Plaintiff Against All Defendants)

21.     Plaintiff incorporates by this reference the allegations contained in the preceding paragraphs above as if fully set forth herein.

22.     California Civil Code § 51 *et seq.* guarantees equal access for people with disabilities to the accommodations, advantages, facilities, privileges, and services of all business establishments of any kind whatsoever. Defendant is systematically violating the Unruh Civil Rights Act, California Civil Code § 51 *et seq.*

23.     The Website is a "business establishment" within the meaning of the California Civil Code § 51 et seq. Defendant has generated, and does generate, hundreds of thousands of dollars in revenue from the sale of its goods in California through the Website. The Website is a service provided by Defendant that, at all relevant times, was inaccessible to patrons who are visually-impaired like Plaintiff. At all relevant times, this inaccessibility denied visually-impaired patrons full and equal access to the facilities and services that Defendant makes available to the non-disabled public. At all relevant times, Defendant violated the Unruh Civil Rights Act by denying visually-impaired customers the services and products provided by the Website.

24.     At all relevant times, Defendant's actions constituted intentional discrimination against Plaintiff on the basis of a disability in violation of the Unruh Civil Rights Act because Defendant constructed a Website that was inaccessible to Plaintiff, knowingly maintained the Website in this inaccessible form, and failed to take adequate actions to correct these barriers even after being notified of the discrimination that such barriers cause.

25.     At all relevant times, Defendant also violated the Unruh Civil Rights Act because the conduct alleged herein likewise constitutes a violation of various provisions of the ADA, 42 U.S.C. § 12101 *et seq.* Section 51(f) of the California Civil Code provides that a violation of the right of any individual under the ADA shall also constitute a violation of the Unruh Civil Rights Act.

26.     The actions of Defendant were in violation of the Unruh Civil Rights Act and, therefore, Plaintiff is entitled to injunctive relief remedying the discrimination.

EXHIBIT A

1        27.    Plaintiff is also entitled to a preliminary and permanent injunction enjoining Defendant

2    from violating the Unruh Civil Rights Act and requiring Defendant to take the steps necessary to make

3    the Website readily accessible to and usable by visually-impaired individuals.

4        28.    Plaintiff is also entitled to statutory minimum damages pursuant to California Civil Code

5    § 52 for each and every offense.  Plaintiff is also entitled to reasonable attorneys' fees and costs.

6    However, Plaintiff expressly limits the total amount of recovery, including statutory damages, attorneys'

7    fees and costs, and cost of injunctive relief not to exceed $74,999.

8    **PRAYER FOR RELIEF**

9        WHEREFORE, Plaintiff prays for relief and judgment as follows:

10       1.    For a judgment that Defendant violated Plaintiff's rights under the Unruh Civil Rights

11   Act, California Civil Code § 51 *et seq.*;

12       2.    For a preliminary and permanent injunction requiring Defendant to take the steps

13   necessary to make the Website, https://www.drinkarizona.com/, readily accessible to and usable by

14   visually-impaired individuals; but Plaintiff hereby expressly limits the injunctive relief to require that

15   Defendant expend no more $20,000 as the cost of injunctive relief;

16       3.    An award of statutory minimum damages of $4,000 per violation pursuant to section

17   52(a) of the California Civil Code; however, Plaintiff expressly limits the total amount of recovery,

18   including statutory damages, attorneys' fees and costs, and cost of injunctive relief not to exceed

19   $74,999;

20       4.    For attorneys' fees and expenses pursuant to all applicable laws including, without

21   limitation, California Civil Code § 52(a); however, Plaintiff expressly limits the total amount of

22   recovery, including statutory damages, attorneys' fees and costs, and cost of injunctive relief not to

23   exceed $74,999;

24       5.    For pre-judgment interest to the extent permitted by law;

25   ///

26   ///

27   ///

28   ///

EXHIBIT A

6.     For costs of suit; and

7.     For such other and further relief as the Court deems just and proper.

Dated: March 25, 2020                           PACIFIC TRIAL ATTORNEYS, APC

                                                By: _____
                                                Scott. J. Ferrell
                                                Attorneys for Plaintiff

- 10 -
COMPLAINT

EXHIBIT A

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury of all claims and causes of action so triable in this lawsuit.

Dated: March 25, 2020

PACIFIC TRIAL ATTORNEYS, APC

By: _____
Scott. J. Ferrell
Attorneys for Plaintiff

- 11 -
COMPLAINT

EXHIBIT A