RUSTY RENDON v. ARIZONA BEVERAGES USA LLC    CASE NO. _____

# EXHIBIT B

Case 2:20-cv-04946-SVW-CJS Document 1-2 Filed 06/04/20 Page 2 of 15 Page ID #:20

Electronically FILED by Superior Court of California, County of Los Angeles on 05/21/2020 07:52 PM Sherri R. Carter, Executive Officer/Clerk of Court, by J. Lara, Deputy Clerk

PACIFIC TRIAL ATTORNEYS
A Professional Corporation
Scott J. Ferrell, Bar No. 202091
sferrell@pacifictrialattorneys.com
Victoria C. Knowles, Bar No. 277231
vknowles@pacifictrialattorneys.com
4100 Newport Place Drive, Ste. 800
Newport Beach, CA 92660
Tel: (949) 706-6464
Fax: (949) 706-6469

Attorneys for Plaintiff

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF LOS ANGELES**

| | |
|---|---|
| RUSTY RENDON, an individual, | Case No. 20STCV12028 |
| Plaintiff, | |
| v. | **FIRST AMENDED COMPLAINT** |
| ARIZONA BEVERAGES USA LLC, a New York limited liability company, and DOES 1-10, inclusive, | Filed: March 25, 2020<br>Trial Date: None Set |
| Defendants. | |

EXHIBIT B

FIRST AMENDED COMPLAINT

Plaintiff Rusty Rendon ("Plaintiff") alleges the following upon information and belief based upon investigation of counsel, except as to his own acts, which he alleges upon personal knowledge:

**INTRODUCTION**

1. As recently recognized by the Supreme Court of the United States, "The Internet's prevalence and power have changed the dynamics of the national economy." *South Dakota v. Wayfair, Inc.*, 138 S. Ct. 2080, 2097 (2018) (noting that in 1992, less than 2 percent of Americans had Internet access whereas today that number is about 89 percent). According to 2018 polling data, 89 percent of American adults use the Internet.[1] Indeed, one federal district court has noted that "few areas are more integral to 'the economic and social mainstream of American life,' than the Internet's websites." *Del-Orden v. Bonobos, Inc.*, No. 17 Civ. 2744 (PAE), 2017 WL 6547902, at *9 (S.D.N.Y. Dec. 20. 2017); *United States v. Peterson*, 248 F.3d 79, 83 (2d Cir. 2001) ("Computers and Internet access have become virtually indispensable in the modern world of communications and information gathering.").

2. According to recent U.S. Census data, approximately 8 million Americans describe themselves as disabled because they are visually-impaired.[2] Thus, depriving blind persons of equal access to commercial websites on the internet would allow American businesses to treat blind persons as second-class citizens who can be segregated from the rest of American society, which is antithetical to the very purpose that motivated Congress to enact the Americans with Disabilities Act of 1990, 42 U.S.C. § 12181 *et seq.* ("ADA"), almost three decades ago, as well as the enactment of California's Unruh Civil Rights Act. "'Congress found that 'historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem.' '" *Del-Orden*, 2017 WL 6547902, at *9 (quoting *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 674-75, 121 S. Ct. 1879 (2001) (quoting 42 U.S.C. § 12101(a)(2))). "Congress found that 'physical or mental disabilities in no way diminish a person's right to fully participate in *all aspects of society*, yet many people with physical or

---

[1] http://www.pewinternet.org/fact-sheet/internet-broadband/ (last visited July 30, 2018). Indeed, 98 percent of adults between the ages of 18-29 use the Internet, and 97 percent of adults between the ages of 30-49 use the Internet. *Id.*

[2] In 2016, an estimated 7.7 million Americans reported having a visual disability. http://www.disabilitystatistics.org/reports/acs.cfm?statistic=1 (last visited July 30, 2018). The statistics were calculated by the Cornell University Yang Tan Institute using the U.S. Census Bureau's 2016 American Community Survey (ACS) Public Use Microdata Sample (PUMS) data. The estimate is based on a sample of 3,085,278 persons who participated in the 2016 ACS.

1  mental disabilities have been precluded from doing so because of discrimination.'" *Del-Orden*, 2017
2  WL 6547902, at *9 (quoting 42 U.S.C. § 12101(a)(1)) (emphasis added in *Del-Orden*). "After
3  thoroughly investigating the problem, Congress concluded that there was a 'compelling need' for a 'clear
4  and comprehensive national mandate' to eliminate discrimination against disabled individuals, and to
5  integrate them 'into the economic and social mainstream of American life.'" *PGA Tour*, 532 U.S. at
6  675 (quoting S. Rep. No. 101-116, p. 20 (1989); H.R. Rep. No. 101-485, pt. 2, p. 50 (1990),
7  U.S.C.C.A.N. 1990, pt. 2, pp. 303, 332). To remedy these ills, "Congress provided [a] broad mandate"
8  in the Americans with Disabilities Act of 1990 ("ADA") to effect the statute's "sweeping purpose." *Id.*
9  "In a society in which business is increasingly conducted online, excluding businesses that sell services
10  through the Internet from the ADA would[:] 'run afoul of the purposes of the ADA and would severely
11  frustrate Congress's intent that individuals with disabilities fully enjoy the goods, services, privileges,
12  and advantages ***available indiscriminately to other members of the general public***'". *National Ass'n of*
13  *the Deaf v. Netflix, Inc.*, 869 F. Supp. 2d 196, 200 (D. Mass. 2012) (emphasis added) (quoting *Carparts*
14  *Distrib. Ctr. v. Auto Wholesaler's Ass'n*, 37 F.3d 12, 20 (1st Cir. 1994)).

15        3.    Section 51(f) of the California Civil Code provides that a violation of the right of any
16  individual under the ADA, shall also constitute a violation of the Unruh Civil Rights Act. A person who
17  visits a business's website with intent to use its services and encounters terms or conditions that exclude
18  the person from full and equal access to its services has standing under the Unruh Act, with no further
19  requirement that the person enter into an agreement or transaction with the business. *White v. Square,*
20  *Inc.*, 7 Cal.5th 1019, 2019 WL 3771912, at *7 (Cal. Sup. Ct. Aug. 12, 2019).

21        4.    Plaintiff is a blind individual who requires screen reading software to read website
22  content and access the internet. At all relevant times, Defendant Arizona Beverages USA LLC
23  ("Defendant") maintained its website, https://www.drinkarizona.com/ (the "Website") in such a way
24  that the Website contained numerous access barriers preventing Plaintiff, and other blind and visually-
25  impaired individuals, from gaining equal access to the Website. At all relevant times, Defendant's denial
26  of full and equal access to its Website, and therefore its products and services offered thereby, is a
27  violation of Plaintiff's rights under the ADA, and the California Unruh Civil Rights Act.
28  ///

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this action. This Court has personal jurisdiction over Defendant because Defendant has conducted and continues to conduct substantial business in the State of California, and because Defendant's offending Website is available across California.

6. Venue is proper in this Court because Defendant conducts substantial business in this County, and because a substantial portion of the misconduct alleged herein occurred in the County of Los Angeles.

## PARTIES

7. Plaintiff Rusty Rendon resides in Madera County, California. Plaintiff is permanently blind and uses screen readers in order to access the internet and read website content. At all relevant times, as detailed above, despite several attempts to use and navigate the Website, Plaintiff was denied the full use and enjoyment of the facilities and services of the Website as a result of accessibility barriers on the Website. At all relevant times, the access barriers on the Website caused a denial of Plaintiff's full and equal access multiple times in the past, and deterred Plaintiff on a regular basis from accessing Defendant's Website.

8. While Plaintiff genuinely wants to avail himself of Defendant's goods and services as offered on Defendant's Website, Plaintiff has a dual motivation: he is also a "tester," which one federal court has defined to be "individuals with disabilities who visit places of public accommodation to determine their compliance with Title III [of the ADA]." *Harty v. Burlington Coat Factory of Penn., L.L.C.*, Civil Action No. 11-01923, 2011 WL 2415169, at *1 n.5 (E.D. Pa. June 16, 2011). Indeed, it is widely accepted that "testers" such as Plaintiff advance important public interests and should be "praised rather than vilified." *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 954 (7th Cir. 2006). Plaintiff has filed multiple lawsuits against various operators of commercial websites under the Unruh Civil Rights Act as part of his advocacy work on behalf of the civil rights of visually-impaired persons. Plaintiff intends to continue to engage in such advocacy work into the foreseeable future to ensure that Defendant's commercial Website and others are fully and equally enjoyable to and usable by visually-impaired persons, including himself.

EXHIBIT B

- 4 -

FIRST AMENDED COMPLAINT

9. Plaintiff is informed and believes, and thereon alleges, that Defendant Arizona Beverages USA LLC, is a New York corporation with its principal place of business located in Woodbury, New York. Plaintiff is informed and believes, and thereon alleges, that Defendant owns, operates and provides to the public the Website. The Website provides access to Defendant's array of products and services, including descriptions of its products, amenities and services, and many other benefits related to its products and services. The Website is a public accommodation within the definition of Title III of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12181(7) and is a "business establishment" within the meaning of the Unruh Civil Rights Act, California Civil Code § 51 *et seq.* The Website is a service, privilege, and advantage and accommodation of Defendant's services.

10. At all relevant times, each and every Defendant was acting as an agent and/or employee of each of the other Defendants and was acting within the course and/or scope of said agency and/or employment with the full knowledge and consent of each of the Defendants. Each of the acts and/or omissions complained of herein were alleged and made known to, and ratified by, each of the other Defendants (Arizona Beverages USA LLC, and DOE Defendants will hereafter collectively be referred to as "Defendant").

11. The true names and capacities of the Defendants sued herein as DOES 1 through 10, inclusive, are currently unknown to Plaintiff, who therefore sues such Defendants by fictitious names. Each of the Defendants designated herein as a DOE is legally responsible for the unlawful acts alleged herein. Plaintiff will seek leave of Court to amend this Complaint to reflect the true names and capacities of the DOE Defendants when such identities become known.

## FACTS

12. The Internet has become a significant source of information, a portal and tool for conducting business, and a means for doing everyday activities such as shopping, banking, etc. for both the sighted and blind, and/or visually-impaired persons.

13. Blind individuals may access websites by using keyboards in conjunction with screen-reading software that vocalizes visual information on a computer screen. Screen access software provides the only method by which a blind person may independently access the internet. Unless websites are designed to be read by screen reading software, blind persons are unable to fully access

EXHIBIT B

1  websites and the information, products and services, privileges, advantages, and accommodations
2  contained thereon.

3      14.    The international website standards organization, W3C, has published version 2.0 of the
4  Web Content Accessibility Guidelines ("WCAG 2.0").  WCAG 2.0 are well-established, industry
5  standard guidelines for ensuring websites are accessible to blind and visually-impaired people.  These
6  guidelines are successfully followed by numerous large business entities to ensure their websites are
7  accessible.  These guidelines recommend several basic components for making websites accessible
8  including, but not limited to, adding invisible alternative text to graphics, ensuring that all functions can
9  be performed using a keyboard and not just a mouse; ensuring that image maps are accessible, and
10 adding headings so that blind people can easily navigate websites. Without these very basic components,
11 a website will be inaccessible to a blind or visually-impaired person using a screen reader.

12     15.    Defendant offers the Website, which provides, as set forth above, a breadth of
13 information concerning its products, and other amenities and services, privileges, advantages, and
14 accommodations.

15     16.    Based on information and belief, at all relevant times, it was Defendant's policy and
16 practice to deny blind users, including Plaintiff, equal enjoyment of and access to the Website.  At all
17 relevant times, due to Defendant's failure and refusal to remove access barriers on the Website, Plaintiff
18 and other blind and visually impaired individuals were denied equal enjoyment of and access to
19 Defendant's services, advantages, privileges, and accommodations offered to the public through the
20 Website.

21     17.    At all relevant times, Defendant denied blind individuals equal enjoyment of and access
22 to the products, other services, privileges, advantages, and accommodations and information made
23 available through the Website by preventing them from freely navigating the Website.  At all relevant
24 times, the Website contained access barriers that prevent free and full use by Plaintiff and other blind
25 persons using screen reading software.

26     18.    At all relevant times, the Website's barriers were pervasive and included, but were not
27 limited to, the following: (1) Missing alternative text which presents a problem because an image without
28 alternative text results in an empty link. Alternative Text is invisible code embedded beneath a graphical

EXHIBIT B

FIRST AMENDED COMPLAINT

image on a website. Web accessibility requires that Alternative Text be coded with each picture so that a screen reader can speak the Alternative Text where a sighted user sees pictures. Alternative Text does not change the visual presentation, but instead generates a text box that will pop-up when the mouse moves over the picture. The lack of Alternative Text on these graphics prevents screen readers from accurately vocalizing a description of the graphics; (2) Linked image missing alternative text which presents a problem because an image without alternative text results in an empty link. Images that are the only thing within a link must have descriptive alternative text. If an image is within a link that contains no text and that image does not provide alternative text, a screen reader has no content to present to the user regarding the function of the link; (3) Empty links that contain no text causing the function or purpose of the link to not be presented to the user. This can introduce confusion for keyboard and screen reader users; and (4) Missing form label, which means that a form control does not have a corresponding label. If a form control does not have a properly associated text label, the function or purpose of that form control may not be presented to screen reader users. Form labels also provide visible descriptions and larger clickable targets for form controls.

19. At all relevant times, due to the inaccessibility of the Website, blind and otherwise visually impaired customers who use screen readers were hindered from effectively browsing for Defendant's products, amenities and services, privileges, advantages, and accommodations that exist online unlike sighted users. If the Website had been accessible, Plaintiff would have independently and privately investigated Defendant's products, services, privileges, advantages, accommodations, and amenities, as sighted individuals can and do.

20. Despite several attempts to access the Website in recent months, at all relevant times the numerous access barriers contained on the Website denied Plaintiff's full and equal access, and deterred Plaintiff on a regular basis from accessing the Website. Similarly, at all relevant times, based on the numerous access barriers contained on the Website, Plaintiff was deterred from purchasing Defendant's products services as Plaintiff would have been able to do by using the Website. Plaintiff continues to attempt to utilize the Website and plans to continue to attempt to utilize the Website in the near future. Plaintiff's dignitary interest as a disabled person has been harmed by Defendant's actions.

///

# FIRST CAUSE OF ACTION

## Violations of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12181 *et seq.*

### (By Plaintiff Against All Defendants)

21. Plaintiff incorporates by this reference the allegations contained in the preceding paragraphs above as if fully set forth herein.

22. Section 302(a) of Title III of the ADA, 42 U.S.C. § 12181 *et seq.*, provides: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

23. Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes, among other things: "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations"; and "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden". 42 U.S.C. § 12182(b)(2)(A)(ii)-(iii). "A public accommodation shall take those steps that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the public accommodation can demonstrate that taking those steps would fundamentally alter the nature of the goods, services, facilities, privileges, advantages, or accommodations being offered or would result in an undue burden, i.e., significant difficulty or expense." 28 C.F.R. § 36.303(a). In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a

way as to protect the privacy and independence of the individual with a disability." 28 C.F.R. § 36.303(c)(1)(ii).

24. Defendant's Website constitutes a "public accommodation" within the meaning of 42 U.S.C. § 12181 *et seq.* Defendant generates millions of dollars in revenue from the sale of its products and services, privileges, advantages, and accommodations. The Website is a service, privilege, advantage, and accommodation provided by Defendant that is inaccessible to patrons who are visually-impaired like Plaintiff. This inaccessibility denies visually-impaired patrons full and equal enjoyment of and access to the facilities and services, privileges, advantages, and accommodations that Defendant made available to the non-disabled public. Defendant is violating the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.*, in that Defendant denies visually-impaired customers the services, privileges, advantages, and accommodations provided by the Website. These violations are ongoing.

25. Defendant's actions constitute intentional discrimination against Plaintiff on the basis of a disability in violation of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.*, in that: Defendant has constructed a website that is inaccessible to Plaintiff; knowingly maintains the website in this inaccessible form; and has failed to take adequate actions to correct these barriers even after being notified of the discrimination that such barriers cause.

26. Pursuant to 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff requests relief as set forth below.

### SECOND CAUSE OF ACTION

### Violations of the Unruh Civil Rights Act, California Civil Code § 51 *et seq.*

**(By Plaintiff Against All Defendants)**

27. Plaintiff incorporates by this reference the allegations contained in the preceding paragraphs above as if fully set forth herein.

28. California Civil Code § 51 *et seq.* guarantees equal access for people with disabilities to the accommodations, advantages, facilities, privileges, and services of all business establishments of any kind whatsoever. Defendant is systematically violating the Unruh Civil Rights Act, California Civil Code § 51 *et seq.*

///

29. The Website is a "business establishment" within the meaning of the California Civil Code § 51 et seq. Defendant has generated, and does generate, hundreds of thousands of dollars in revenue from the sale of its goods in California through the Website. The Website is a service provided by Defendant that, at all relevant times, was inaccessible to patrons who are visually-impaired like Plaintiff. At all relevant times, this inaccessibility denied visually-impaired patrons full and equal access to the facilities and services that Defendant makes available to the non-disabled public. At all relevant times, Defendant violated the Unruh Civil Rights Act by denying visually-impaired customers the services and products provided by the Website.

30. At all relevant times, Defendant's actions constituted intentional discrimination against Plaintiff on the basis of a disability in violation of the Unruh Civil Rights Act because Defendant constructed a Website that was inaccessible to Plaintiff, knowingly maintained the Website in this inaccessible form, and failed to take adequate actions to correct these barriers even after being notified of the discrimination that such barriers cause.

31. At all relevant times, Defendant also violated the Unruh Civil Rights Act because the conduct alleged herein likewise constitutes a violation of various provisions of the ADA, 42 U.S.C. § 12101 et seq. Section 51(f) of the California Civil Code provides that a violation of the right of any individual under the ADA shall also constitute a violation of the Unruh Civil Rights Act.

32. The actions of Defendant were in violation of the Unruh Civil Rights Act and, therefore, Plaintiff is entitled to injunctive relief remedying the discrimination.

33. Plaintiff is also entitled to a preliminary and permanent injunction enjoining Defendant from violating the Unruh Civil Rights Act and requiring Defendant to take the steps necessary to make the Website readily accessible to and usable by visually-impaired individuals.

34. Plaintiff is also entitled to statutory minimum damages pursuant to California Civil Code § 52 for each and every offense. Plaintiff is also entitled to reasonable attorneys' fees and costs.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment as follows:

1. For a judgment that Defendant violated Plaintiff's rights under the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq. and the Unruh Civil Rights Act, California Civil Code § 51

*et seq.*;

2. For a preliminary and permanent injunction requiring Defendant to take the steps necessary to make the Website, drinkarizona.com, readily accessible to and usable by visually-impaired individuals;

3. An award of statutory minimum damages of $4,000 per violation pursuant to section 52(a) of the California Civil Code;

4. For attorneys' fees and expenses pursuant to all applicable laws including, without limitation, California Civil Code § 52(a);

5. For pre-judgment interest to the extent permitted by law;

6. For costs of suit; and

7. A judgment for all such other relief as this Court deems just and proper.

Dated: May 21, 2020

PACIFIC TRIAL ATTORNEYS, APC

By: _____
Scott. J. Ferrell
Attorneys for Plaintiff

EXHIBIT B

- 11 -
FIRST AMENDED COMPLAINT

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury of all claims and causes of action so triable in this lawsuit.

Dated: May 21, 2020

PACIFIC TRIAL ATTORNEYS, APC

By: *[signature]*
Scott. J. Ferrell
Attorneys for Plaintiff

# PROOF OF SERVICE
## STATE OF CALIFORNIA, COUNTY OF ORANGE

I am employed in the County of Orange, State of California. I am over the age of 18 and not a party to the within action; my business address is 4100 Newport Place Drive, Suite 800, Newport Beach, CA 92660.

On May 21, 2020, I served the foregoing document described as **FIRST AMENDED COMPLAINT** on the following person(s) in the manner indicated:

**SEE ATTACHED SERVICE LIST**

☐ (BY MAIL) I am familiar with the practice of Pacific Trial Attorneys for collection and processing of correspondence for mailing with the United States Postal Service. Correspondence so collected and processed is deposited with the United States Postal Service that same day in the ordinary course of business. On this date, a copy of said document was placed in a sealed envelope, with postage fully prepaid, addressed as set forth herein, and such envelope was placed for collection and mailing at Pacific Trial Attorneys, Newport Beach, California, following ordinary business practices.

☐ (BY OVERNIGHT FEDERAL EXPRESS) I am familiar with the practice of Pacific Trial Attorneys for collection and processing of correspondence for delivery by overnight courier. Correspondence so collected and processed is deposited in a box or other facility regularly maintained by Federal Express that same day in the ordinary course of business. On this date, a copy of said document was placed in a sealed envelope designated by Federal Express with delivery fees paid or provided for, addressed as set forth herein, and such envelope was placed for delivery by Federal Express at Pacific Trial Attorneys, Newport Beach, California, following ordinary business practices.

☐ (BY HAND DELIVERY) I am familiar with the practice of Pacific Trial Attorneys for collection and processing of correspondence for hand delivery by courier. I caused such document t be delivered by hand to the addresse(s) designated.

☐ (BY ELECTRONIC TRANSMISSION) I served electronically from the electronic notification address of mjung@pacifictrialattorneys.com the document described above and a copy of this declaration to the person and at the electronic notification address set forth herein. The electronic transmission was reported as complete and without error.

☒ (BY ELECTRONIC SERVICE) I am causing the document(s) to be served by email or electronic transmission via USA Legal sent on the date shown below to the email addresses of the persons listed in the attached service list.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this declaration was executed on May 21, 2020, at Newport Beach, California.

Mandy K. Jung

## SERVICE LIST

Aaron M. Schue  
Morrison Cohen LLP  
909 Third Avenue  
New York, NY 10022  
Tel: (212) 735-8871  
Fax: (917) 522-9971  
Email: aschue@morrisoncohen.com

Attorneys for Defendant  
ARIZONA BEVERAGES USA LLC